## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ANDREW TYRONE JAMES,     *
                                 *
    Petitioner,       *
                                 * CIVIL ACTION NO. 10-00412-WS-B
vs.                        * CRIMINAL NO. 09-00018-WS
                                 *
UNITED STATES OF AMERICA,   *
                                 *
    Respondent.       *

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Andrew Tyrone James' Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 and supporting memorandum (Docs. 65, 66), the Government's Response thereto (Doc. 70), and Petitioner's Reply. (Doc. 73). This action has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration. The undersigned has conducted a careful review of the record and finds that no evidentiary hearing is required to resolve this case. Kelley v. Secretary for Dep't of Corrs., 377 F.3d 1317 (11th Cir. 2004). Following a complete review of this action, it is recommended that James' petition be **DENIED**, that this action be **DISMISSED**, and that judgment be entered in favor of Respondent and against James.

## I.  **Background**

On January 29, 2009, James was charged in a two count indictment with conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846 (Count one) and possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count two).  (Doc. 4).  Attorney Daniel McCleave was appointed to represent James on February 17, 2009.  (Doc. 14).

James, through his counsel, notified the Court of his intent to plead guilty during a pretrial conference conducted on March 10, 2009.  (Doc. 23).  On March 24, 2009, the parties filed a Plea Agreement, which was executed by James, his counsel, and counsel for the Government.[1]  (Doc. 26).  In the Plea Agreement, James agreed that he would plead guilty to count one in the indictment, conspiracy to distribute crack cocaine in violation of title 21 U.S.C. § 846, and that he was waiving his right to collaterally attack his sentence except in limited circumstances. Specifically, James agreed to waive his right to appeal or collaterally attack his sentence except if the sentence imposed punishment in excess of the statutory maximum, if the sentence constituted an upward departure of the guideline range, or if a claim of ineffective assistance of counsel were asserted. (Id. at 10).

---

[1] Attached to the Plea Agreement was a factual resume which outlined the elements of the offense, and the facts supporting his plea to the offense.  (Doc. 26 at 13-14)

During the guilty plea hearing that followed on April 3, 2009, Chief United State's District Judge William H. Steele had James placed under oath, and he questioned James about the plea agreement and about the voluntariness of his plea. During the hearing, James was questioned regarding the voluntariness of his plea and testified as follows:

> THE COURT: Have each of your received a copy of the indictment in your case, had a full opportunity to read it and review it with your attorney , and do you fully understand the charge contained in the indictment? . . . Mr. James?
>
> DEFENDANT JAMES: Yes Sir.
>
> ...
>
> THE COURT: Are each of you fully satisfied with the representation you've received from your attorney in this case, and *have you fully discussed with your attorney all of the facts surrounding the charge* . . . Mr. James?
>
> DEFENDANT JAMES: Yes, sir.
>
> THE COURT: Now, I've been furnished a written plea agreement in each of your cases, and this plea agreement appears to have your signature at the end of the plea agreement and also at the end of the factual resume. Did you, in fact, sign the document . . . Mr. James?
>
> DEFENDANT JAMES: Yes, sir.
>
> THE COURT: By signing the document, you are acknowledging that you've received a copy of it, that you've had an opportunity to *review it* and *discuss it with your attorney*, and that you *understand the terms and conditions of the plea agreement and factual resume*, and that *you agree with it*. Is that true . . . Mr. James?

DEFENDANT JAMES: Yes, sir.

THE COURT: Have there been any promises made to you by anyone or has anyone attempted in any way to force you to plead guilty or to pressure you or threaten you in any way . . . Mr. James?

DEFENDANT JAMES: No, sir.

THE COURT: . . . Mr. James, if convicted of Count One of the indictment, you could receive a term of imprisonment from 10 years to life without parole, a fine not to exceed four million dollars, a supervised release term up to five years, and a mandatory special assessment of $100. Do you understand that . . . Mr. James?

DEFENDANT JAMES: Yes, sir.

...

THE COURT: The United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how those guidelines might affect your case . . . Mr. James?

DEFENDANT JAMES: Yes, sir.

THE COURT: The way in which the Sentencing Guidelines apply to your case might be affected by what you say to the Court and to the probation officer. The Court will not be able to determine an appropriate sentence for your case until after a presentence report has been completed and you and the United States have had an opportunity to challenge the facts reported by the probation officer. Do you understand that ... Mr. James?

DEFENDANT JAMES: Yes, sir.

THE COURT: The sentence imposed *might be different from any estimate your attorney* or anyone else might have given you. Do you understand that, . . . Mr. James?
DEFENDANT JAMES: *Yes*, *sir*.

THE COURT: . . . Under some circumstances, you and the United States each may have the right to appeal any sentence the judge imposes. For instance, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings not waived by your guilty plea.

You also have the right to waive your right to appeal, and I see by your plea agreements that *you are waiving* your right to appeal any sentence imposed with the following exceptions; and that would be any punishment *in excess of the statutory maximum*, any punishment constituting an *upward departure* of the guideline range, and any claim of ineffective assistance of counsel. Do you understand that, . . . Mr. James?

DEFENDANT JAMES: Yes, sir.

THE COURT: Parole has been abolished. If you are sentenced to prison, you will not be released on parole. Do you understand that, . . . Mr. James.

DEFENDANT JAMES: Yes, sir.

THE COURT: If the sentence is more severe than you expected or if I do not accept the sentencing recommendation in your plea agreement, you will still be bound by your plea. *Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea.* The time to make that decision is now. Do you understand that, . . . Mr. James?

DEFENDANT JAMES: *Yes*, *sir*.

THE COURT: . . . Also included in your plea agreement is a factual resume, and the factual resume contains a statement of the elements of the offense to which you are pleading guilty.

. . .

Okay . . . Mr. James, your *factual resumes contain a statement of the elements of the offense charged* in Count One of the indictment, which states a

violation of Title 21, United States Code, Section 846.

The elements of that offense are that two or more persons in some way or manner came to a mutual understanding to distribute crack cocaine, or to possess with intent to distribute it; and that each such defendant knowingly and willfully became a member of such conspiracy. *Do you understand that those are the elements of the offense to which you are pleading guilty*, . . . Mr. James?

DEFENDANT JAMES: *Yes*, *sir*.

THE COURT: And do you fully understand that if there was a trial in this case, the United States would be required to present sufficient evidence to prove *each of those essential elements beyond a reasonable doubt* . . . Mr. James?

DEFENDANT JAMES: Yes, sir.

THE COURT: Also included in your factual resume is a statement of offense conduct. Did you, in fact, commit the acts and do the things that you have admitted to in this statement of offense conduct, . . . Mr. James?

DEFENDANT JAMES: Yes, sir.

THE COURT: Then I find that the facts and acts to which you've admitted support a violation of the charge contained in Count One of the indictment. How do you now plead to that charge, guilty or not guilty, . . . Mr. James?

DEFENDANT JAMES: *Guilty*.

(Doc. 69). (Emphasis added). The Court accepted James' guilty plea to conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846, and found that James was fully competent and capable of entering an informed plea, and that his plea of guilty was knowing and voluntary. (Id.).

James' sentencing was scheduled for September 21, 2009. (Doc. 28).

Probation generated a presentencing report (hereinafter "PSR") which placed James' base offense level at 32, based on the quantity of drugs, and accorded him a 3 level reduction for timely acceptance of responsibility. This resulted in an adjusted offense level of 29. (PSR, Doc. 37, pp. 8-10, ¶¶ 25, 30-32). James's criminal history category was V. (PSI, p. 12, ¶ 43). The resulting guideline range was 140 to 175 months imprisonment. (PSI, p. 17, ¶ 73). The offense carried a statutory minimum sentence of ten years imprisonment with a possible maximum sentence of life imprisonment. (PSI, pp. 16-17, ¶ 72).

At the request of the parties, James' sentencing hearing was postponed until October 6, 2009. (Docs. 43, 44, 69-1). At the sentencing hearing, James was sentenced to a 120 month term of imprisonment. The Court also imposed 5 years of supervised release and a special assessment of $100. (Id. at 45). The Court, on October 9, 2009, entered the Judgment and Commitment Order. (Id.).

James did not file a direct appeal in this case; however, on August 2, 2010, he filed a petition (Doc. 61) and supporting memorandum (Doc. 62) collaterally attacking his conviction and sentence pursuant to 28 U.S.C. § 2255. James alleged seven

grounds of error. (Id.) On August 13, 2010, the Court ordered James to file his petition on this Court's form and granted his request for leave to expand the record with information James averred was essential to the Court's assessment of his petition. (Docs. 63, 64). In his amended motion and supporting memorandum (Docs. 65, 66) James raises the following claims:

> (1) defense counsel was ineffective in failing to provide competent advice during the negotiation, plea agreement, and waiver provisions,
>
> (2) his constitutional rights were violated when the Baldwin County Sheriff's narcotics agents arrested him, coerced him to cooperate without counsel, failed to take him before a judge as required by Fed. R. Crim. P. 5, and then released him on "agent bond,"
>
> (3) defense counsel was ineffective in failing to investigate Petitioner's claims of actual innocence with respect to the conspiracy charge,
>
> (4) defense counsel was ineffective in failing to review the PSR with Petitioner and file objections to known errors,
>
> (5) the government committed prosecutorial misconduct in using the sheriff deputy as an informant to entrap Petitioner in the sting operation,
>
> (6) defense counsel's ineffectiveness rendered the plea agreement and factual resume void because of false contents by drafter, and
>
> (7) the government breached the plea agreement by not filing a Motion for Downward Departure.

(Doc. 66).

The Government filed a Response opposing James' petition and contends that "James is suffering from a case of 'buyer's remorse.'" (Doc. 70 at 18). The Government argues that James' "ineffective assistance of counsel claims [(1), (3), (4), and (6)] are without merit because he can show neither deficient performance nor prejudice" as required by Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). (Doc. 70 at 4). In addition, the Government avers that James' pre-plea ineffective assistance of counsel claims (1), (3), and (6) are due to be denied under Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), because he cannot establish a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Doc. 70 at 18). The Government also asserts that James' post-plea ineffective assistance of counsel claim (4), challenging the PSR, is without merit because James admitted that his counsel reviewed the PSR with him and that he understood its contents. (Id. at 22).

The Government further contends that James' claims (2) and (5) that his constitutional rights were violated during his arrest and that there existed prosecutorial misconduct stemming from the use of a deputy to entrap him during a sting operation are waived and due to be denied under United States v. Broce, 488

U.S. 563, 569, 109 S. Ct. 757, 672, 102 L. Ed. 2d 927 (1989), which held that "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." (Doc. 70 at 19). In addition, the Government argues that James' claim (7) asserting that the Government breached the plea agreement is procedurally barred and without merit as it is clearly belied by the record. (Id. at 24).

On November 30, 2010, James filed a Reply in which he asserted that his "claims surround[] the fact that the government's agents and law enforcement may have used illegal tactics to entrap Petitioner, which induced him to enter into an unintelligent plea". (Doc. 73 at 2). According to James, "his defense attorney failed to fully explain to him what consisted of a conspiracy." (Id.). While, "[he] understands and is aware that the Court read the indictment, and that he agreed with the factual resume, however, Petitioner contends that his answers were made under duress and coercion from his defense attorney, based on the belief that he would be getting a lesser sentence." (Id.). James further alleges that the Government employed a "rogue agent", Jess Villa, who "was a major instrument in the case." (Id.). James reiterates that he is entitled to habeas relief because he was not "brought before a federal magistrate as required under Rule 5." (Id. at 3).

## II. **Analysis**

### a. **Habeas Standard**

Habeas relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982). A petitioner who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id., 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 2240, 60 L. Ed. 2d 805 (1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). However, a petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims

may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990). A meritorious claim of ineffective assistance of counsel can constitute cause. U.S. v. Nyhuis, 211 F. 3d 1340, 1344 (11th Cir. 2000).

**b. Ineffective Assistance of Counsel Claims (1), (3), (4), and (6)**

Where, as here, a petitioner claims ineffective assistance of counsel rendered his guilty plea unknowing, involuntary, and unintelligent and the petitioner was represented by counsel during the plea process and entered his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d 763 (1970). In Strickland v. Washington, supra, 466 U.S. 668, the Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel. The Court held that "[when] a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id., 466 U.S. at 687-88. In addition, "[the] defendant must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694. This additional "prejudice" requirement was based on the premise that "[an] error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 466 U.S. at 691. The Strickland v. Washington standard has been applied in the guilty plea context. See Hill v. Lockhart, supra, 474 U.S. at 57 ("Although our decision in Strickland v. Washington dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process. Certainly our justifications for imposing the 'prejudice' requirement in Strickland v. Washington are also relevant in the context of guilty pleas").

Under the Federal Rules of Criminal Procedure, a plea of guilty will be deemed voluntary, if before a guilty plea has been accepted, the "court . . . address[es] the defendant personally in open court" and "determine[s] that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). In the Eleventh Circuit, there is "a 'strong

presumption' that statements made by a defendant during his plea colloquy are true." United States v. Cardenas, 230 Fed. Appx. 933, 935 (11th Cir. 2007) (unpublished)[2] (citing United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994)). "[T]herefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" Cardenas, 230 Fed. Appx. at 935 (quoting United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)).

In this case, James asserts that his plea was involuntary because "his defense attorney failed to fully explain to him what consisted of a conspiracy" and his "answers were made under duress and coercion from his defense attorney, based on the belief that he would be getting a lesser sentence." (Doc. 73 at 2). James' assertions are not supported by the record evidence. The record is wholly devoid of any evidence that suggests that James' plea was involuntary, unknowing, or unlawfully induced. Indeed, the record reflects that the Court conducted a thorough Rule 11 plea colloquy, wherein James was advised of the consequences of his guilty plea, of the nature of the charges, of the maximum penalty he faced, that his sentence would be determined by the Court and that it could be different from any

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

estimate his attorney might have given him, that the Court would make the ultimate sentencing determination, and that he would not be able to withdraw his plea if his sentence was more severe than anticipated. (Doc. 69). James stated unequivocally that he understood each of these conditions and confirmed that no one had forced him to plead guilty, nor had anyone induced him to plead guilty with promises or assurances of any kind but that he was pleading guilty because he was, in fact, guilty. (Id. at 9-10, 18). James also acknowledged that he fully discussed his case, including the charge and elements of conspiracy, with his attorney, that he understood the charge of conspiracy, and that he was satisfied with the representation and advice given by his counsel. (Id., at 7-8). Based on this record, it is clear that notwithstanding James' assertions to the contrary, his plea was knowing, intelligent, and voluntary.

Not only does the record demonstrate that James' plea was knowing, intelligent and voluntary, James acknowledged that he understood the penalties that could be imposed, that he committed the facts alleged in the factual resume, and that he was pleading guilty of his own free will because he was, in fact, guilty. (Id., at 9-10, 18). Based on James' testimony at the guilty plea hearing and his adoption of the facts in the factual resume, his contention that his counsel was ineffective in the pre-plea stage by (1) improperly negotiating the plea

deal, (3) improperly advising him on the elements of conspiracy, and (6) improperly counseling him to agree with the contents of the plea agreement and factual resume and that his plea was not knowing, intelligent, and voluntary as a result is without merit. The record clearly establishes that James was aware of the contents of the plea agreement and factual resume, which contained the elements of conspiracy and the details of his involvement therein. In addition, the record establishes that James was fully aware of the potential sentence that could have been imposed and that he entered his plea of his own volition. Thus, his claim must fail. See Langford v. U.S., 2009 U.S. Dist. LEXIS 127453, *25 (S.D. Ala. Oct. 22, 2009) ("Mere disappointment that a court imposed a harsher sentence tha[n] what one hoped for is not the proper basis for a motion to vacate.").

In addition, James' post-plea ineffective assistance of counsel claim (4), that his counsel failed to review the PSR with him and object to errors is without merit and belied by the record. The record clearly establishes that at James' sentencing, the Court directly questioned James' counsel, in James' presence about whether he had received the PSR and whether he had discussed it with James. (Doc. 69-1 at 3). James' counsel stated that he had. The Court then asked James "do you understand what's contained in the report?" James

answered, "Yes, sir." (Id.).  The record also reflects that James' counsel did, in fact, raise an objection regarding information in the PSR and the objections were resolved.  (Id.). Thus, James' contention that his attorney was ineffective for failing to object to the information contained in the report is without merit and is due to be denied.

### c. Government's Conduct Claims (2) and (5)

In claim (2), James asserts that he is entitled to habeas relief because he was arrested on January 13, 2009 for an alleged crime, coerced by agents to "cooperate in setting up another suspect," released on an "agent bond," and he "never appeared before any judge or magistrate until February 13, 2009," which James avers is a violation of his constitutional rights.  (Doc. 66 at 11).  James argues that the alleged misconduct so "prejudiced this case by taking advantage of [him] while he was under duress, which may have tainted [his] rights to a fair trial."  (Id. at 12).  James contends that "if the Court finds that the government violated Rule 5 of the federal Code and Rules of Criminal Procedure, then relief in the form of dismissing the indictment with prejudice is the only remedy." (Id.).  In claim (5) James asserts that it is his belief, although he has no proof, that the Government used a sheriff's deputy, Jesse Villa, to entrap him into joining the conspiracy.

Assuming arguendo, that the Government violated James'

rights during his arrest, James is not entitled to habeas relief on these claims as he waived these claims when he knowingly, voluntarily, and intelligently pleaded guilty to conspiracy. Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973). In Tollett, the Supreme Court ruled that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id. "He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann, [supra]." Tollett, 411 U.S. at 267. Thus, having found that James' guilty plea was knowing, voluntary, and intelligent, James' claims alleging pre-plea deprivation of constitutional rights are due to be denied.

### d. Breach of Plea Agreement Claim (7)

In his final claim, James asserts that the Government breached the plea agreement because the Assistant United States Attorney (hereinafter "AUSA") did not file a 5K1.1 motion for downward departure. (Doc. 66 at 21). Specifically, James contends that he entered his guilty plea because he understood that the Government would file a 5K1.1 motion for downward departure. (Id.). James' assertions are not supported by the

18

record, and do not establish a breach by the Government.

Generally, the government has the power, but not the duty, to file a § 5K1.1 substantial-assistance motion. <u>Wade v. United States</u>, 504 U.S. 181, 185, 112 S. Ct. 1840, 1843, 118 L. Ed. 2d 524 (1992). In <u>Wade</u>, the Supreme Court held that a district court can review a prosecutor's refusal to file a substantial-assistance motion and grant a remedy if the court finds that the refusal was based on an unconstitutional motive, such as the defendant's race or religion. <u>Id</u>. at 185-86, 112 S. Ct. at 1843-44. The Eleventh Circuit has held that "judicial review is appropriate only when there is an allegation *and* a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation." <u>United States v. Brown</u>, 2013 U.S. App. LEXIS 11230, *7 (11th Cir. 2013)(quoting <u>United States v. Dorsey</u>, 554 F.3d 958, 961 (11th Cir. 2009). "Mere allegations of bad faith on the part of the government are not sufficient if they are unrelated to the constitutionally impermissible motivation." <u>Id</u>. at *8 (citing <u>United States v. Forney,</u> 9 F.3d 1492, 1501 n.4 (11th Cir. 1993)) .

In the case at hand, James does not allege nor are there any facts to suggest that the Government's refusal to file a 5K1.1 motion in this case was based on an unconstitutional motive. Instead, the record evidence demonstrates that the

Government's refusal to seek a downward departure for James was based on the fact that he did not provide substantial assistance.

The parties' plea agreement provides, in pertinent part,:

> If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, *a decision specifically reserved by the United States in the exercise of its sole discretion,* then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable.

(Doc. 26 at 7).

The record reflects that during James' sentencing hearing, counsel for the Government advised the Court that while James contacted the DEA agent, at the recommendation of his counsel, in an effort to provide assistance, he was of no help to the DEA agent because he indicated that he did not know any drug dealers. (Doc. 69-1 at 11-13). Upon questioning by the Court, James acknowledged that because he had been labeled a "snitch," he had not been able to provide assistance; however, if he was given another opportunity, he could probably work with the new dealers, who did not know his situation, and provide assistance. (Id.) In response, the Court noted that "the problem you've got, Mr. James, is we're here today for sentencing . . . And the

fact that you think you may be able to cooperate in the future doesn't help you now because you haven't done that. (Id. at 13). Given the undisputed evidence that James did not provide substantial assistance to the Government, the Government was under no obligation to file a 5K1.1 motion on his behalf. Because James has failed to establish that the Government breached the plea agreement, he is not entitled to relief on this claim.

## III. **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED.** 28 U.S.C. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should be issued [only] when the

prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 146 L. Ed. 2d 542 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should be issued only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394 77 L. Ed. 2d 1090 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

James' claims do not warrant the issuance of a Certificate of Appealability. Reasonable jurists could not debate whether claims should be resolved in a different manner or deserves to

proceed further. The recommendation that James' claim be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of his claims on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability.

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 65) be **DENIED,** that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Andrew Tyrone James. The undersigned Magistrate Judge further opines that James is not entitled to issuance of a Certificate of Appealability.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the

Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **30th** day of **August, 2013.**

_____
      **/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
